**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-25-00185-CV**
_____

**IN RE BLACKSTONE CLAIM SERVICES, INC. AND GARY
PENNINGTON**

**Original Proceeding
284th District Court of Montgomery County, Texas
Trial Cause No. 24-06-09858**

**MEMORANDUM OPINION**

Blackstone Claim Services, Inc. and Gary Pennington (collectively "Relators"
or "Plaintiffs") petitioned for a writ of mandamus to compel the trial court (1) to
vacate an Order Denying Plaintiffs' Motion for Leave to Designate Expert Twenty
Days Late, dated May 2, 2025, (2) to vacate an Order Denying Plaintiffs' Verified
Motion for Abatement, or, Alternatively, Verified Motion for Continuance, dated
May 2, 2025, and (3) abate the case or grant a continuance. We stayed further
proceedings in the trial court and obtained a response from the Real Parties in
Interest, John Barkley and Barkley Law Group, Inc. We deny mandamus relief.

1

## Background

Trial Cause Number 24-06-09858 is a suit for legal malpractice that commenced in June 2024. Plaintiffs Blackstone and Pennington alleged Barkley, who is a lawyer and an accountant, created a faulty incentive stock option plan that did not qualify as a deferred compensation plan pursuant to section 409A of the Internal Revenue Code because he undervalued the stock price. Plaintiffs further alleged Barkley assisted James King, Blackstone's Director of Operations, in mismanaging Blackstone, usurping business opportunities, and preparing fraudulent tax returns that severely undervalued the stock and showed an ownership interest by King when King had not exercised his options or otherwise complied with the plan.

King sued Pennington in Bexar County for dissolution of Blackstone in July 2022. Pennington and Blackstone filed a counterclaim/third-party claim against King for breach of fiduciary duty, fraud, tortious interference with contracts, and conversion. In the Bexar County suit, King obtained a $2.5 million interlocutory summary judgment against Blackstone for conversion of 40,000 shares of Blackstone common stock. According to Relators, the Bexar County suit is still pending.

In the Montgomery County suit, the trial court's initial docket control order (DCO) set an April 7, 2025 trial date. Under that DCO, Plaintiffs' expert designation date was November 7, 2024 and discovery closed January 7, 2025. The deadlines

were extended by agreement, making the expert designation date March 7, 2025 and the close of discovery May 5, 2025, for a July 7, 2025, trial date.

Plaintiffs' February 2025 Responses to Interrogatories stated that they were seeking as damages "distributions Blackstone paid out to King as shareholder when he was not a shareholder under the Plan[,]" "approximately $476,055.80, which is the additional withholding taxes due to IRS from Blackstone due to section 409A violations, not including interest and penalties[,]" "approximately $2,002,400 in the difference in amount between what King paid for shares under his options and amount King should have paid for Blackstone's stock if options had been issued at fair market value[,]" and "approximately $100,000 in attorney's fees incurred in litigation with King."

The parties agreed to extend the deadline to designate experts to March 17, 2025. On March 17, 2025, Blackstone and Pennington filed their designation of expert witnesses and rule 195.5 disclosures. Their retained experts included Kevin George, Kimberley Ford, and "David B. Coffin, J.D. C.P.A. (pending formal retention)[.]" As to the subject matter and general substance of the expert's mental impression and opinion and a brief summary of the basis for them, Plaintiffs disclosed:

> David B. Coffin is a lawyer and certified public accountant and retained legal expert regarding tax and accounting matters and is expected to testify regarding any aspect of Plaintiffs' claims and legal theories for

which he is qualified to testify. Mr. Coffin earned his BBA in accounting and his law degree from the University of Oklahoma.

He is licensed to practice law and is a certified public accountant in Oklahoma and Texas. He is currently an adjunct professor at SMU Dedman School of Law in Dallas, Texas, teaching Federal Tax Practice and Procedure.

Before opening his firm in November of 2010, Mr. Coffin practiced as a Trial Attorney for more than 11 years with the Department of Justice Tax Division, where he represented the IRS in bankruptcy and federal district courts throughout Texas. His cases included several complex legal and factual corporate tax shelter cases. Mr. Coffin has also handled a wide range of cases dealing with the enforcement of federal tax liens including claims of fraudulent conveyances, nominee holders and jeopardy levies, and cases involving the Trust Fund Recovery Penalty assessment.

Mr. Coffin is expected to opine on tax-related matters, including that it is improper to back-date the Plan and or prepare fraudulent tax returns for Blackstone showing a fraudulent date for the grant of the stock options to King and Blackstone's potential liability to the IRS in the amount of $476,055.80 due to a 409A violation.

Mr. Coffin's opinions are expected to be based on his knowledge, education and experience, as well as his review of discovery from this case and the King litigation, including depositions.

For further response, please refer to Mr. Coffin's written opinion, if one is provided, and his deposition, if and when taken, which are incorporated as if set forth verbatim herein.

On April 2, 2025, Blackstone and Pennington filed their First Amended Designation of Expert Witnesses and Rule 195.5 Disclosures. They removed Coffin and added Jason Freeman. With regard to the subject matter and general substance

4

of the expert's mental impression and opinion and a brief summary of the basis for them, Plaintiffs disclosed:

> Jason Freeman is a lawyer, a certified public accountant, and retained legal expert regarding tax and accounting matters and is expected to testify regarding any aspect of Plaintiffs' claims and legal theories for which he is qualified to testify.
>
> Mr. Freeman earned his B.B.A., M.P.A., in accounting, and his law degree from the University of Texas. He is licensed to practice law in Texas, the United State[s] Tax Court, the United States Supreme Court, the United State[s] Court of Appeals, Third and Seventh Circuits, the United States District Court for the Western, Northern, Eastern, and Southern District of Texas, and the United States District Court for the Northern District of Illinois. He currently serves on the law school faculty at SMU Dedman School of Law in Dallas, Texas, teaching Federal Income Taxation.
>
> His background included complex business disputes with a focus on federal and state tax controversies, as well as white-collar and financial disputes. He has handled IRS audits, complex financial and other regulatory matters as well as being experienced in fraud, breach of fiduciary duty, civil RICO, negligence, partnership disputes, breach of contract, and other matters.
>
> Mr. Freeman is expected to opine on tax-related matters, including that it is improper to back-date the Plan and or prepare fraudulent tax returns for Blackstone showing a fraudulent date for the grant of the stock options to King and Blackstone's potential liability to the IRS in the amount of $476,055.80 due to a 409A violation. As a CPA, Mr. Freeman may also testify as to the methods and data used in preparing a proper valuation study of Blackstone and confirm the results of the valuation study of Blackstone and values for Blackstone at various points in time coinciding with the applicable dates set forth in the Plan at issue in this lawsuit, as conducted by Kimberley Ford and Jennifer Edwards.

5

Mr. Freeman's opinions are expected to be based on his knowledge, education and experience, as well as his review of discovery from this case and the King litigation, including depositions.

For further response, please refer to Mr. Freeman's written opinion, if one is provided, and his deposition, if and when taken, which are incorporated as if set forth verbatim herein.

On April 14, 2025, Blackstone and Pennington filed an opposed Motion to Abate Trial Setting or, Alternatively, Verified Motion for Continuance. Plaintiffs contended their damages "are somewhat dependent" on the Bexar County litigation and argued their damages were "tied to ongoing litigation, remain uncertain and directly affect this case, including expert testimony." Regarding their alternative request for a continuance, Plaintiffs stated:

Despite diligent efforts, discovery remains incomplete due to scheduling conflicts and the ongoing need to depose both fact and expert witnesses. Plaintiffs have three retained experts—an accounting expert and two legal experts—who require time to review recent and upcoming depositions before being deposed themselves. Additionally, Plaintiffs' counsel has a conflicting trial beginning May 5, 2025, further preventing timely completion of expert discovery. Plaintiffs therefore request at least a 90-day continuance to finish discovery and adequately prepare for trial if abatement is denied.

On April 15, 2025, Blackstone and Pennington filed a Verified Motion for Leave to Designate Expert Twenty Days Late. Plaintiffs contended there was good cause to allow the late designation because after designating Coffin with a notation that the designation was pending formal retention, Coffin "indicated that he could not serve as an expert." Plaintiffs asserted they quickly retained Freeman and filed

an amended designation "disclosing that Mr. Feeman was expected to testify to the same issues that Mr. Coffin was expected to testify to." According to Plaintiffs, "the need to designate a new retained expert did not arise until Mr. Coffin indicated that he could not accept the engagement, which occurred after the March 7, 2025 deadline. Mr. Coffin referred Plaintiffs' counsel to Jason Freeman who, upon reviewing materials and discussing the matter with the undersigned counsel, agreed to the engagement."

In amended disclosures dated April 18, 2025, Relators described the amount and any method of calculating economic damages, as follows:

> But for Defendants' conduct, Plaintiffs would not have entered the transaction with King and thus would not have paid King any distributions. Moreover, had Defendants complied with their duties of care and conduct, the distributions and expense reimbursements to King would not have occurred. But for Defendants' conduct in causing the grant price of the options to be less than fair market value, Blackstone would not be liable for the additional tax withholding, penalties, and interests. Moreover, if options had been properly issued at fair market value, King would have paid $1,040,000 to $1,520,000 more than what he was required to pay, or if King did not, Plaintiffs would not have entered the transaction with King. Because of that, or because of other conduct committed by Defendants, as outlined above, Plaintiffs incurred attorney's fees litigating with King, and Blackstone suffered the $2,490,000.00 judgment that King obtained, which would not have otherwise occurred.

On April 30, 2025, Barkley filed a response to the motion to abate or for a continuance. Barkley argued there was no need to abate the case, as the partial summary judgment on King's conversion claim was the only part of the Bexar

County lawsuit that related to the stock option plan and the limitations tolling rule for malpractice-in-litigation claims did not apply to Blackstone's suit against Barkley for the transactional legal drafting Barkley performed for Blackstone. Barkley argued there was no justifiable basis to grant a second continuance because Plaintiffs knew they needed an expert to prove their claims, the designation deadline had already been twice extended by agreement, and Barkley notified Plaintiffs an additional extension would be opposed. Barkley complained Plaintiffs had refused to produce experts for depositions due to supposed scheduling conflicts and the plaintiff counsel's conflicting trial had recently been continued until August, making counsel available for trial on July 7, 2025.

Barkley also filed a response to Plaintiffs' motion for leave to designate Freeman. In the response, Barkley asserted Plaintiffs' original designation of Coffin was "flawed" because Plaintiffs failed to disclose and produce the documents that were provided for Coffin's review and failed to produce a report or make him available for deposition. Barkley also asserted Plaintiffs had not met their burden to establish good cause for belatedly substituting Freeman in Coffin's place because the "true cause" of Freeman's late designation was Plaintiffs' own lack of diligence in locating and retaining a liability expert. Barkley provided the trial court copies of Plaintiffs' interrogatory answers which indicate they discovered Barkley's alleged "malfeasance" on June 28, 2022, along with a copy of an attorney fee invoice

8

indicating that as early as November 21, 2023, Plaintiffs had met with the attorney who would eventually file the legal malpractice action against Barkley on June 24, 2024. Barkley directed the trial court's attention to the Docket Control Order setting Plaintiffs' expert deadline as November 8, 2024, the Amended Docket Control Order extending the deadline to March 7, 2025, and a copy an email agreement extending the deadline to March 17, 2025.

Barkley argued that when Plaintiffs finally served their expert designations on March 17, 2025, they had been aware for 990 days (since June 28, 2022) that they would need an expert witness to prosecute their legal malpractice claim against Barkley, but still had not formally retained one, as evidenced by the phrase "pending formal retention" accompanying Coffin's designation. According to Barkley, Plaintiffs' "[m]otion offers zero explanation for why Plaintiffs were unable to retain a standard of care expert until nearly three (3) weeks the after the Extended Amended Deadline, almost nine (9) months after filing this lawsuit, and almost three (3) years since they first anticipated filing this lawsuit." Barkley complained that since Plaintiffs had not produced a report from Freeman and were unable to make Freeman available for deposition prior to May 5, 2025 (the discovery deadline), Barkley would be required to "guess" about his methodology and would be unfairly prejudiced by the inability to question Freeman sufficiently in advance of the deadlines for challenging experts and filing dispositive motions.

9

The trial court held a hearing on May 2, 2025. Plaintiffs argued their damages depended on the finality of the Bexar County case. They argued they filed the Montgomery County lawsuit because some damages in the form of litigation costs in the Bexar County suit had already occurred. Additionally, they argued "tax liability is somewhat hypothetical at this point."

Plaintiffs requested a continuance as alternative relief. They argued a continuance was necessary because they received Barkley's disclosure in August but did not receive the documents until December. They exchanged written discovery January through March and started depositions in April, but some fact witnesses remained to be deposed. The three experts designated by Plaintiffs include an accountant, a legal expert on fiduciary duties and conflicts, and the late-designated expert on tax issues. Plaintiffs argued the experts need the remaining depositions to provide opinions based on the deposition testimony.

Regarding their motion to designate Freeman as an expert witness, Plaintiffs argued they had good cause to designate Freeman as an expert because the timely-designated witness had initially agreed to testify but changed his mind and decided he would not testify. Plaintiffs admitted Freeman's designation added that Freeman would testify regarding the accountant's report on valuation but argued that otherwise Freeman would testify on the "exact same issues based on the same

qualifications of being a tax lawyer that were outlined in the designations that were provided."

Barkley argued Plaintiffs failed to establish good cause to substitute Freeman for Coffin because Plaintiffs had "forever" to find an attorney/CPA to opine that the plan was improperly drafted but failed to do so timely, and because Plaintiffs also designated George as a legal expert on breach of fiduciary duties. Barkley argued abatement was inappropriate because Barkley ceased representing Blackstone in July 2022 and never represented the company in the King litigation. Barkley argued against granting a continuance because Plaintiffs had refused Barkley's repeated requests to make their experts available for depositions.

The trial court denied the motion for leave for a late expert designation as well as the motion for abatement or continuance in written orders signed on the same date.

Mandamus Standard

To obtain mandamus relief, a relator must show both that the trial court has clearly abused its discretion and that the relator has no adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In*

11

*re Cerberus Cap. Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding).

We determine whether an adequate appellate remedy exists by weighing the benefits of mandamus review against the detriments. *In re Acad., Ltd.*, 625 S.W.3d 19, 32 (Tex. 2021) (orig. proceeding). An appeal is not an adequate remedy if the very act of proceeding to trial—regardless of the outcome—would defeat the substantive right involved. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 465 (Tex. 2008) (orig. proceeding). Appeal is not an adequate remedy if the trial court's discovery order vitiates or severely compromises the party's ability to present a viable claim or defense. *Walker v. Packer*, 827 S.W.2d 833, 843 (Tex. 1992) (orig. proceeding).

Exclusion of Expert

Relators contend the trial court abused its discretion by denying their motion for leave to file a late designation of Freeman as an expert witness. Texas Rule of Civil Procedure 193.6(a) provides for the automatic exclusion of information that is not timely disclosed in discovery unless the proffering party establishes the applicability of an exception:

> A party who fails to make, amend, or supplement a discovery response, including a required disclosure, in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:
>
> (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or

(2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

Tex. R. Civ. P. 193.6(a). The burden of establishing an exception rests on the party seeking to introduce the evidence, and such a finding must be supported by the record. *See id.* 193.6(b). We review a trial court's Rule 193.6(a) decision for abuse of discretion. *See Jackson v. Takara*, 675 S.W.3d 1, 6 (Tex. 2023); *Big Wheel Dev., Inc. v. Orange Cnty. Bldg. Materials, Inc.*, No. 09-07-00381 CV, 2008 Tex. App. LEXIS 4726, at **5-6 (Tex. App.—Beaumont June 26, 2008, no pet.) (mem. op.). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Regarding a previous version of the automatic-exclusion rule, we stated:

> The salutary purpose of Rule 215(5) is to require complete responses to discovery so as to promote responsible assessment of settlement and prevent trial by ambush. The rule is mandatory, and its sole sanction--exclusion of evidence--is automatic, unless there is good cause to excuse its imposition. The good cause exception permits a trial court to excuse a failure to comply with discovery in difficult or impossible circumstances. The trial court has discretion to determine whether the offering party has met his burden of showing good cause to admit the testimony; but the trial court has no discretion to admit testimony excluded by the rule without a showing of good cause.[1]

---

[1] The current version of the automatic-exclusion rule, Rule 193.6, also permits the admission of testimony that will not result in unfair surprise or unfair prejudice to the opposing party. *See* Tex. R. Civ. P. 193.6(b).

13

*Etheridge v. Oak Creek Mobile Homes, Inc.*, 989 S.W.2d 412, 416 (Tex. App.—Beaumont 1999, no pet.) (citing *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex. 1992)). "[A] trial court's discretion in determining good cause is limited … to situations where (1) the party could not, in good faith and with due diligence, respond; or (2) difficult or impossible circumstances prevented the party from supplementing discovery." *Brown Found. Repair & Consulting Co. v. Gonzalez*, No. 05-99-00091-CV, 2000 Tex. App. LEXIS 487, at **5-6 (Tex. App.—Dallas Jan. 21, 2000, no pet.). "To relax the good cause standard … would impair its purpose. Counsel should not be excused from the requirements of the rule without a strict showing of good cause." *Alvarado*, 830 S.W.2d at 915. "The more exceptions are made to the simple requirement that litigants identify expert witnesses and persons with relevant knowledge, the more the purpose of the rule is impaired." *Smith v. Sw. Feed Yards*, 835 S.W.2d 89, 94 (Tex. 1992) (Hecht, C.J., concurring).

In their motion for leave, Relators claimed there was good cause for designating Freeman after the deadline:

> Here, the need to designate a new retained expert did not arise until Mr. Coffin indicated that he could not accept the engagement, which occurred after the March 7, 2025 deadline. Mr. Coffin referred [Relators'] counsel to Jason Freeman who, upon reviewing materials and discussing the matter with the undersigned counsel, agreed to the engagement. The late designation was therefore caused by difficult circumstances, not inadvertence of counsel. Thus, good cause is established.

14

At the hearing on their motion for leave, when asked why Mr. Coffin was being "swapped out" for Mr. Freeman, Relators' counsel explained:

[Relator's counsel]: And so Mr. Coffin, he was reviewing the materials. He was a little reluctant at first to testify against a lawyer. He had never done it before. And so he had agreed to come on board and says -- you know, gave him the information, and then he comes back to me, and he goes, No, I don't want to do it. I've changed my mind. And so based upon that, I said, Do you know anybody? And he referred me to Mr. Freideman [sic]. Within a couple weeks' time, I got in touch with Mr. Freideman [sic], provided him the documents, had discussions with him, and got him retained. And so that's the reason that there was this swap-out. I think that it is -- that that is sufficient cause if impossible circumstances exist like what. So I think we've demonstrated good cause.

Relators argue on appeal that the trial court acted arbitrarily and unreasonably because their explanation of good cause was "uncontroverted." Even if uncontroverted, Relators' explanation of what occurred after the deadline fails to address Barkley's contention that Relators failed to exercise due diligence before the deadline. As noted in Barkley's response to Relator's motion for leave, legal malpractice claims in Texas ordinarily require expert testimony of an attorney to establish the standard of care and causation. *See Alexander v. Turtur & Assocs.*, 146 S.W.3d 113, 119-20 (Tex. 2004); *Hall v. Rutherford*, 911 S.W.2d 422, 424 (Tex. App.—San Antonio 1995, writ denied). Supported by evidence attached to his response, Barkley asserted Relators must have been aware for months, or perhaps years, that they would need an expert to establish their legal malpractice claims but

15

still did not know at the expiration of the twice-extended deadline whether Mr. Coffin would accept the assignment, since "formal retention" was still "pending[.]"

Faced with allegations they had not exercised due diligence in retaining an expert, Relators—who bore the burden of establishing good cause—never revealed to the trial court what steps they took to find an expert, when they began those efforts, when they first contacted Mr. Coffin, or when they sent him the materials that he reviewed before informing them he would not accept the assignment. Good cause may exist to designate a new expert where the original expert unexpectedly withdraws if, in advance of the deadline, the designating party diligently sought out the expert and promptly took steps to solidify the expert's retention. But good cause may not exist if the designating party waited until the last minute to try to find an expert or failed to promptly provide the information necessary for the expert to decide whether or not to accept the assignment. Without information about Relators' pre-deadline efforts to retain an expert, the trial court may have reasonably concluded that Relators did not meet their burden to establish good cause, and on the record before us, we cannot say the trial court abused its discretion. *See Diamond Hydraulics, Inc. v. GAC Equip., LLC*, 719 S.W.3d 615, 623 (Tex. App.—Austin 2024, pet. granted) ("the district court could have reasonably concluded that Diamond failed to establish good cause for the substitution" where the original expert had been deposed and then suddenly withdrew 31 days before trial).

16

We do not, as the dissent claims, require parties or their attorneys to prophesy that an expert who has already been retained will one day change his mind and decide not to testify. The dissent relies on *Diamond Hydraulics, Inc. v. GAC Equip., LLC*, but the Court's opinion in that case reveals that before Dr. Macfarlan quit his job, moved out of state and refused to testify, he had already prepared a report and testified by way of deposition, indicating that Dr. Macfarlan's retention as an expert had already been solidified before the need unexpectedly arose to substitute Dr. Hoerner (who helped prepare the report) in his place. 731 S.W.3d 901, 903-04 (Tex. 2026). Here, there is no indication Coffin agreed to testify and then changed his mind. To the contrary, his designation came with a disclaimer that his "formal retention" was still "pending[.]" As far as the trial court knew, Relator waited until the eleventh hour (or perhaps even later) to contact Coffin, send him the relevant materials, and learn whether he would actually testify consistent with the opinions disclosed in Relator's designation of experts. We do not construe *Diamond Hydraulics* nor Rule 193.6 to allow designation of an expert merely as a placeholder while the designating party continues (or perhaps begins) searching for an expert who will actually testify. Narrowing the diligence analysis to the time period after Coffin decided not to testify—as the dissent advocates—would not answer whether that is what occurred in this case. And if it is not, it was Relator's burden in this mandamus proceeding to demonstrate that the evidence before the trial court was

17

such that denying Relator's motion for leave to designate Freeman constituted an abuse of discretion. We hold Relator did not meet that burden.

Relators also assert three reasons that Barkley would not have been unfairly surprised or prejudiced by Freeman's late designation. First, Relators claim Freeman would be testifying to the same opinions about which Coffin had been timely designated to testify. However, according to Barkley's response to the motion for leave, Relators' original designation of Coffin, while timely, was inadequate because it did not indicate what material he had reviewed. The trial court may have reasonably concluded substituting Freeman for Coffin would not remedy this deficiency. The trial court may also have reasonably concluded that even if Coffin's and Freeman's opinions were not substantively different, substituting one for the other three weeks after the deadline would still result in delay which would unfairly prejudice Barkley's ability to meet pretrial deadlines and prepare for trial. Secondly, Relators assert they offered to make Freeman available for deposition. But the record reveals Relators were unable to provide any dates for Freeman's deposition until after the discovery deadline which was only eleven days before the deadline for motions for summary judgment to be filed in time for the submission deadline, only twenty-one days before the deadline for expert challenges to be heard, and only two months before trial. Relators' arguments do not address Barkley's assertion that Freeman's late designation, without a report or an opportunity to depose Freeman

before the discovery deadline, would require Barkley to guess about Freeman's methodology and unfairly prejudice Barkley's ability to file a timely motion challenging Freeman's opinions or a timely dispositive motion. Lastly, Relators assert Freeman's testimony would not duplicate that of their other experts. This fact does not lessen the unfair surprise and prejudice Barkley claims he would experience due to Freeman's late designation. *See Alvarado*, 830 S.W.2d at 915 (the automatic exclusion rule would be "pointless[]" if it operated only to exclude unimportant evidence). Based on the record before us, the trial court may have reasonably concluded that Relators failed to negate unfair surprise or prejudice. Because the record does not demonstrate the trial court abused its discretion in excluding Freeman's testimony, we overrule Relators' first issue.

## Denial of Abatement

Relators contend the trial court abused its discretion by denying their motion to abate the case until the conclusion of all trial court proceedings and appeals in the Bexar County lawsuit. Citing *In re Texas Collegiate Baseball League, Ltd.*, Relators argue the trial court's ruling requires them to pursue claims for which their alleged damages are not yet known. *See* 367 S.W.3d 462, 465 (Tex. App.—Fort Worth 2012, orig. proceeding). Citing *Philips v. Giles*, Relators contend their legal malpractice suit must be abated until the Internal Revenue Service issues a notice of deficiency

19

on the deferred compensation plan. *See* 620 S.W.2d 750, 751 (Tex. App.—Dallas 1981, orig. proceeding). Both cases are distinguishable.

In *Philips*, the plaintiff sued her divorce lawyer for advising her that there were no tax implications from a promissory note executed by her former spouse to affect their property settlement agreement. 620 S.W.2d at 750. The plaintiff reported the income on her tax returns but the Internal Revenue Service neither determined the money in question was income nor assessed taxes on the money she reported. *Id.* The trial court granted the lawyer's plea in abatement and the appellate court denied mandamus relief because without an assessment by the Internal Revenue Service, her cause of action had not accrued. *Id.* at 751. Here, Relators argued their cause of action for legal malpractice accrued when they incurred litigation costs in the Bexar County lawsuit. Thus, Relators allege they have been damaged by Barkley's faulty advice and they did not prematurely file the legal malpractice suit.

In *Texas Collegiate Baseball League*, a lawyer was actively representing the League in three lawsuits when the League sued the attorney to enforce a settlement agreement concerning his fees for representing the League in those lawsuits. 367 S.W.3d at 464. The lawyer contested the alleged agreement and counterclaimed for his fees. *Id.* The League amended its pleadings to allege the lawyer committed legal malpractice in the three ongoing lawsuits. *Id.* The trial court denied the League's motion to abate the fee claim and the malpractice claim pending final resolution of

20

the three lawsuits. *Id.* In a mandamus petition, the League argued that by denying the motion to abate legal malpractice claim, the trial court forced the League to attack the lawyer's representation in the malpractice litigation while they defended that representation in the other lawsuits. *Id.* at 465. As to both the legal malpractice claim and the fee claim, the League argued that absent an abatement they would be required to engage in discovery and pursue claims that had not yet accrued and for which their damages were not yet known. *Id.* The lawyer agreed the malpractice claim was unripe but argued the fee claim had accrued and should proceed. *Id.* Because the League would be prejudiced by having to defend the fee claim before the legal malpractice claim matured, the appellate court granted mandamus relief and directed the trial court to abate both the legal malpractice claim and the fee claim until the underlying litigation concluded. *Id.* at 469-70. Here, as they demonstrated in their disclosures and interrogatory responses, Relators' damages are not unknowable. Moreover, litigating the Bexar County and the Montgomery County lawsuits at the same time does not force Relators to take inconsistent positions regarding Barkley's legal advice. We conclude the trial court acted within its discretion when it denied Relators' motion to abate.

Denial of Continuance

Relators contend the trial court abused its discretion by denying their Alternative Motion for Continuance in which they argued discovery was incomplete

21

and requested an additional 90 days to complete discovery. Ordinarily, "the denial of a motion for continuance is an incidental trial ruling ordinarily not reviewable by mandamus." *GMC v. Gayle*, 951 S.W.2d 469, 477 (Tex. 1997). Relators argue special circumstances exist here because the trial court wrongfully excluded their legal tax expert and denied their motion to abate. Barkley contends the trial court had the discretion to deny a motion for continuance because Relators established neither good cause nor no undue prejudice through their motion for leave to designate Freeman as a substitute testifying tax attorney expert.

Having concluded the trial court did not abuse its discretion in denying Relators' motion for leave to designate Mr. Freeman or in denying Relators' plea in abatement, we do not agree this case involves special circumstances that would warrant our review of the trial court's ruling on Relators' alternative request for a continuance and extension of discovery deadlines.

Conclusion

Because Relators have not demonstrated the trial court abused its discretion, we deny Relators' petition for mandamus.

PETITION DENIED.

PER CURIAM

Submitted on May 30, 2025
Opinion Delivered July 9, 2026

Before Golemon, C.J., Wright and Chambers, JJ.

22

**DISSENTING OPINION**

To obtain mandamus relief, Relators must show both that the trial court has clearly abused its discretion, and they have no adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). We determine the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments, considering whether extending mandamus relief will preserve important substantive and procedural rights from impairment or loss. *See In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). I respectfully dissent, because I believe the trial court abused its discretion by (1) denying Relators leave to late designate Freeman as an expert when they established good cause after their prior expert refused to testify and (2) denying the requested continuance when such would have mitigated any harm in designating Freeman late and both parties had outstanding fact witnesses that needed to be deposed. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36. The Relators have no adequate remedy at law to address these errors. *See id.* The Supreme Court of Texas recently determined a trial court abused its discretion by denying a party's motion for leave to substitute a new expert shortly before trial after its expert witness refused to testify. *See Diamond Hydraulics, Inc. v. GAC Equip., LLC*, 731 S.W.3d 901, 903 (Tex. 2026). "Good cause is a demanding standard, not an impossible one." *Id.*

1

# ANALYSIS

Under the second DCO, Relators' deadline to designate experts fell on March 7, 2025, but the parties agreed to a mutual extension, which then made Relators' expert designations due on March 17, 2025, and bumped the defendants' expert deadline to April 21, 2025. Relators timely designated Coffin as a legal tax expert. Sometime after the deadline, Coffin informed Relators' counsel that he changed his mind and would not testify for Relators. This is undisputed. Without its sole tax expert, Relators requested leave to designate a new legal tax expert, Freeman. Counsel for Relators explained the circumstances and timing of the late request, but the trial court denied it. The trial court also denied a continuance that would have allowed time for Freeman to be deposed and Barkley to find a rebuttal witness, if necessary.

## Motion for Leave

The majority concludes, "Without information about Relators' pre-deadline efforts to retain an expert, the trial court may have reasonably concluded that Relators did not meet their burden to establish good cause, and on the record before us, we cannot say the trial court abused its discretion." The majority determines that Relators failed to establish good cause for the late designation but not because Relators knew before the deadline that Coffin had withdrawn. There is no evidence in the mandamus record that they did. Relators established a prima facie case for

2

good cause. Barkley's counsel could have cross-examined counsel at the hearing but did not. Rather, the majority expected counsel to come to the hearing ready to explain everything he did, from before inception of the suit, to secure a legal tax expert, and it concludes the trial court could deny leave to substitute a new expert because he did not. This focuses on the wrong question as counsel was not asking for leave to designate Coffin late. He asked for leave to designate Freeman after the deadline because Coffin withdrew. *See id.* at 907 (refusing to fault party for failing to anticipate witness's unavailability). Action or inaction to secure Coffin, who was timely designated, should not negate good cause for designating Freeman late once Coffin refused to act as testifying expert. Yet the majority concludes the trial court could have determined that Relators failed to exercise due diligence in securing the first expert given how long the Relators supposedly knew they needed a legal tax expert.

"Many failures could conceivably defeat an otherwise persuasive argument for good cause. A failure to prophesy a witness's future unavailability is not one of them." *Id.* The majority notes that counsel for Relators knew Coffin was reluctant to testify and therefore should have known that he might decide not to testify. Thus, the majority faults Relators' counsel for not designating Coffin sooner so that Relators could designate a new expert before the deadline if Coffin changed his mind. In *Diamond Hydraulics, Inc. v. GAC Equipment, LLC*, the Supreme Court of

3

Texas recently rejected the notion that the gift of prophesy regarding a witness's future availability was a prerequisite to show good cause. *See id.* Under the majority's view, an attorney who timely designated the original expert cannot rely on the DCO deadlines or extensions the parties agreed to. Instead, the majority would require them to show more than a witness changed his mind, including their efforts before the deadline, and here, seemingly before suit was filed. Applying that reasoning to this case, Relators timely designating Coffin was not diligent enough. To show diligence and establish good cause that would satisfy the majority, Relators must have designated the original expert by an amorphous date earlier than the deadline. This view overlooks that Relators timely designated Coffin under an extension that the defendants agreed to, which also extended the defendants' expert deadline.

Although establishing good cause is a demanding standard, the rules do not require a burden so high as to make it impossible. *See id.* at 903. When a party has timely designated an expert who later refuses to testify, the salient inquiry in establishing good cause should be the attorney's diligence in securing and designating a replacement witness. Here, Relators' counsel showed diligence in promptly securing and attempting to designate Freeman as an expert. The record shows that Relators filed a proposed amended designation on April 2, 2025, within

4

fifteen days of March 17, 2025. They also agreed to limit Freeman's testimony to those matters Coffin would have testified to.

On this record and focusing on Relators' diligence in securing and designating Freeman as the sole witness on legal tax matters, I would conclude Relators established good cause, and the trial court abused its discretion by denying their motion for leave as there is no adequate remedy by appeal. *See* Tex. R. Civ. P. 193.6(a); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36.

## Continuance

The majority also concludes Relators failed to establish no surprise or prejudice to Barkley. Assuming that conclusion is correct, and Barkley established that it would be difficult to obtain a rebuttal expert in the three days left in the discovery period as of the hearing date, the trial court should have granted Relators' alternative request for a brief extension of the discovery period so the necessary depositions could be taken before the scheduled trial in July 2025. It might have required a brief extension of the trial date, but that would be preferable to striking a crucial witness.

The trial court noted in the hearing that it schedules cases on a quick turnaround, and the parties had a trial date within thirteen months of filing suit. This was not a case that languished on a trial court's docket for years. The trial court has broad discretion in discovery matters and in managing its docket but not unbridled

5

discretion. *See In re Conner*, 458 S.W.3d 532, 534 (Tex. 2015) (orig. proceeding) (explaining that trial court's broad discretion in managing its docket "is not absolute"); *see also Fults v. Standley*, No. 09-22-00126-CV, 2025 WL 2164868, at *15 (Tex. App.—Beaumont July 31, 2025, pet. filed) (Golemon, C.J., dissenting) (citation omitted) (explaining trial court's broad discretion in controlling discovery rules through sanctions is not unlimited). Relators noted it was not realistic to keep the July trial setting and described the discovery already completed. The trial court responded it was realistic if it denied Relators' requested relief and told counsel, "We're really big on deadlines around here."

The discovery rules ensure that the parties have the necessary information to present their case or their defense and prevent trial by ambush. *See Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex. 1992) (explaining same in context of Rule 193.6's predecessor). The trial court's discovery rulings should comport with these goals. The discovery rules are not there to summarily dispose of a case or be weaponized by the trial court to pre-determine a trial's outcome, and "Texas law greatly favors resolving litigation on the merits rather than on procedural technicalities." *See Mitschke v. Borromeo*, 645 S.W.3d 251, 260 (Tex. 2022); *Fults*, 2025 WL 2164868, at *11 (Golemon, C.J., dissenting). The trial court's action in this case pre-determines the trial's outcome, as Relators cannot prevail in their legal malpractice suit without a legal tax expert. The trial court had the option of requiring

6

Relators to produce Freeman for deposition on a date certain and to consider granting a short continuance if Barkley needed more time to obtain a rebuttal expert. On this record, that is the only reasonable action the trial court could take. The trial court abused its discretion by acting unreasonably in denying the requested continuance to complete Freeman's deposition, and there was no adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36.

## CONCLUSION

As explained above, the trial court abused its discretion: (1) in denying Relators' Motion for Leave to Designate Expert Witness Twenty Days Late where they established good cause; and (2) in denying the Motion for Continuance when doing so would mitigate any prejudice of the late designation to the opposing party. The trial court's rulings left Relators without the sole expert who could opine on taxation issues in this legal malpractice case. Since the trial court abused its discretion, and there is no adequate remedy by appeal, I would grant mandamus relief as to the above-stated rulings. *See id.* Therefore, I respectfully dissent.

W. SCOTT GOLEMON
Chief Justice

Dissent Delivered July 9, 2026

7